## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| HUSSEIN A. YASSINE | § | |
| | § | |
| V. | § | **A-16-CV-105-LY** |
| | § | **(A-12-CR-374-LY)** |
| UNITED STATES OF AMERICA | § | |

## ORDER

Before the Court is the Motion for Leave to Amend § 2255 Petition (Dkt. No. 102); the Government's Response in Opposition (Dkt. No. 104); and Yassine's Reply (Dkt. No. 109). Pursuant to standing order, the motion is referred to the undersigned for resolution.[1]

### I.  Factual and Procedural Background

In 2012 and 2014, Hussein Ali Yassine was convicted in two separate federal criminal cases in this district.  In the first case Yassine was charged with four counts of money laundering. *United States v. Yassine*, No. A-12-CR-105(1) SS.  After a trial, a jury found Yassine guilty on all counts. Dkt. No. 226.  The Honorable Sam Sparks sentenced Yassine to 151 months imprisonment and three years of supervised release.  On July 2, 2014, the judgment was affirmed by the Fifth Circuit Court of Appeals.  Dkt. No. 347.  The Supreme Court denied Yassine's petition for writ of certiorari on December 8, 2014.  Dkt. No. 352.  On September 28, 2015, Yassine filed a motion to vacate pursuant to 28 U.S.C. § 2255, alleging that the Government fabricated evidence, his attorney provided ineffective assistance during his trial and appeal, and he was actually innocent.  On January 4, 2016, Judge Sparks denied the motion to vacate.  Dkt. No. 372.  Yassine has appealed the denial of his 2255 motion, and that appeal is pending before the Fifth Circuit.

---

[1]See *Court Docket Management Order* (Aug. 11, 2016), *available at* http://txwd.uscourts.gov/JudgesInfo/SitePages/StandingOrders.aspx.

In the second case, Yassine was charged with tax fraud related to his ownership and operation of several nightclubs in Austin, Texas. *United States v. Yassine*, No. A-12-CR-374 SS. On February 6, 2013, pursuant to a written plea agreement, Yassine pled guilty to Count Two of the indictment. The plea agreement contained a standard provision in which Yassine waived his right to file a direct appeal or to collaterally attack his conviction. On September 13, 2013, Judge Sparks sentenced Yassine to 36 months imprisonment and one year of supervised release, to run consecutive to the sentence imposed in A-12-CR-105 SS. At Yassine's request, his counsel filed a notice of appeal and then sought to withdraw, as Yassine indicated that he lacked confidence in him. Judge Sparks granted that motion on November 18, 2013, and appointed new counsel to represent Yassine on appeal. On February 19, 2014, that attorney filed an *Anders* brief, stating that he could find no non-frivolous claims to raise on appeal. Dkt. No. 87-3. As a result, on September 10, 2014, the Fifth Circuit dismissed the appeal as frivolous. Dkt. No. 60. The Supreme court denied certiorari on February 25, 2015. Dkt. No. 61.

On February 4, 2016, Yassine filed a pro se motion to vacate, using the standard form. Dkt. No. 76. In the motion he identified one ground for relief, stating that his "guilty plea was obtained in violation of the Sixth Amendment's right to effective assistance of counsel." For "supporting facts" he alleged that his "plea agreement was not intelligently and voluntarily executed because counsel provided ineffective assistance" by (1) not seeking the suppression of certain evidence, and (2) promising Yassine that his sentence would run concurrent to the sentence in his earlier conviction. *Id.* at 3. He noted in the form motion that he was seeking an extension of time to file a memorandum of law to support the claims set out there. *Id*. at 5. The next day, February 5, 2016, Yassine filed a motion specifically requesting an extension of time to submit legal authorities, noting

that he had been told he was being transferred to a different FCI, and would soon be in transit and unable to receive or make filings.  Dkt. No. 78.  Judge Sparks granted the extension request, and gave Yassine until March 25, 2016, to file his memorandum of law.  Dkt. No. 80.  He subsequently extended the deadline again, to May 27, 2016.  Dkt. No. 83.  On May 23, 2016, Yassine filed both his memorandum of law, and a separate motion seeking to disqualify Judge Sparks.  The motion to disqualify argued that Judge Sparks could not be impartial, and alleged that Judge Sparks engaged in plea negotiations in violation of Rule 11.  The motion to disqualify was referred to Judge Xavier Rodriguez, who granted it on August 15, 2016.  Dkt. No. 93.  This matter was then reassigned to Judge Lee Yeakel, Dkt. No. 95, and referred to the undersigned by standing order.

After reviewing all of the pleadings on the motion to vacate, the Court concluded that because the Government and Yassine have submitted conflicting affidavits regarding the issues surrounding Yassine's guilty plea, and his claim that his attorney was ineffective for incorrectly assuring him that his sentence would run concurrently with his previous sentence, an evidentiary hearing was needed.  The Court set the hearing for November 15, 2016, and appointed the Federal Public Defender to represent Yassine at the hearing.  Dkt. No. 96.  Yassine's counsel subsequently sought a continuance of the hearing, noting that he needed "additional time to fully investigate Yassine's claim in preparation for the hearing," and informing the Court that he would soon be filing a motion seeking to amend the 2255 petition "to add that Yassine's plea was rendered involuntary as a result of judicial participation in the plea bargaining process, a violation of Rule 11."  Dkt. No. 100.  The undersigned granted the continuance request, and reset the hearing for February 15, 2017.  Dkt. No. 101.

3

Yassine thereafter filed his motion seeking permission to amend the *pro se* § 2255 motion. His motion states that he seeks to assert a claim that Judge Sparks' participation in the plea bargaining process violated Rule 11, thereby rendering Yassine's guilty plea involuntary. The Government opposes the motion, contending that the Rule 11 claim is barred because: (1) Yassine failed to raise the claim on direct appeal, and (2) it was not filed within the one-year limitation period applicable to § 2255 petitions.

## II.   Analysis

### A.   Is Yassine's newly asserted claim time-barred?

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in federal custody must bring his motion to vacate, set aside or correct sentence within one-year after "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  This deadline applies to both an original § 2255 motion and any subsequent amendments.  *United States v. Gonzalez*, 592 F.3d 675, 678-79 (5th Cir. 2009), *cert. denied*, 562 U.S. 900 (2010).  While Yassine's original § 2255 Motion was filed within the one-year deadline, his amendment was filed after the one-year limitations period expired.  Accordingly, unless this claim "relates back" to his original motion, it is time-barred.

As noted earlier, in his original *pro se* motion, Yassine described a portion of his claim as being that his guilty plea was not intelligently and voluntarily executed because his attorney allegedly promised him that his sentence would run concurrent with the 151-month sentence from the money laundering case.  Dkt. No. 76 at 3. The brief statement of the claim makes no reference to the trial court participating in plea negotiations.  As also detailed earlier, Yassine was granted additional time to file his brief in support of his petition.  That brief was filed on May 23, 2016.  On the second page,

4

in the "Introduction," the memorandum states that "[e]vidence submitted in this proceeding shows that the parties had informed Judge Sparks, prior to rearraignment and again prior to sentencing, that they expected a concurrent sentence, and were assured one would be imposed." Dkt. No. 85 at 2. Yassine further summed up his introduction by arguing that "[b]ecause the guilty plea was procured through counsel's deceit, and/or *as a result of judicial interference during plea negotiations*, the resulting conviction violated the Constitution and must therefore be vacated or the sentence corrected under 28 U.S.C. § 2255." *Id.* (emphasis added). Both Yassine and the Government acknowledge that Yassine raised the claim in the May 2016 brief. Dkt. No. 102 at 1, 2 (stating Yassine's intent is to "amplify" the claim); Dkt. No. 104 at 6.

When the Government responded to the motion, it identified Yassine as having raised five issues in his § 2255 petition. Dkt. No. 87 at 4. Four of the issues the Government construed the petition as raising touch on the present question. As stated by the Government, those were:

1.    Yassine first contends that his attorney in the district court proceedings, Mr. Toland, was ineffective in that he erroneously or deceptively advised Yassine that any term of imprisonment he might receive in the tax fraud case would run concurrent with the 151-month term of imprisonment he had received in the money laundering case. (See Mem. of Law [doc. 85] at 9-13.)

2.    Yassine also contends that Mr. Toland was ineffective because he failed to negotiate a plea agreement that guaranteed Yassine would serve the two terms of imprisonment concurrently. (See id. at 13-14.)

3.    Yassine next contends that Mr. Toland was ineffective because he failed to object when Judge Sparks ordered Yassine's 36-month term of imprisonment on the tax fraud case to run consecutive to Yassine's 151-month term of imprisonment from the money laundering case. (See id. at 14-17.)

4.    Yassine also contends that his appellate counsel in the tax fraud case, Richard Wetzel, was ineffective for failing to present certain grounds for reversal of his conviction and sentence to the court of appeals [including a Rule 11 violation]. (See id. at 17-19.)

*Id.*  In addition to identifying in Yassine's brief three separate claims regarding the failure of the sentence to be concurrent with the earlier sentence, the Government also expressly recognized that Yassine's memorandum raised "an alleged Rule 11 violation by Judge Sparks," and stated that it would address that issue "in the context of Yassine's claims about ineffective assistance by [the appellate counsel]."  *Id.* at 16 n.7.  Interestingly, the Government never objected that any of the issues it viewed as having been raised by Yassine—including the Rule 11 violation—were either untimely, or procedurally barred.  The first time the Government lodged these objections was in response to Yassine's recent motion seeking to amend to "amplify" the claim.

Untimeliness under the AEDPA is not a jurisdictional defect; it is an affirmative defense, and thus it may be waived.  *Day v. McDonough*, 547 U.S. 198, 205, 210 n.11 (2006).  If the Government waives the defense, the trial court is "not . . . at liberty to disregard that choice."  *Id.* at 210 n. 11.  The Supreme Court reaffirmed this point in a 2012 case, where it stated: "A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense." *Wood v. Milyard*, 132 S.Ct. 1826, 1830 (2012).  The same is the case for procedural bar claims. *Trest v. Cain*, 522 U.S. 87, 89 (1997) (procedural default is a defense that must be raised and preserved, or the government loses the right to assert the defense thereafter).  Arguably, therefore, the Government waived both the limitations and procedural bar arguments by not raising them in its response to Yassine's original 2255 petition.

At the end of the day, even if the Government did not waive these arguments, the result is the same, as Yassine's proposed Rule 11 claim is timely.  "By statute, Congress provided that a habeas petition 'may be amended . . . as provided in the rules of procedure applicable to civil actions.'" *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (quoting 28 U.S.C. § 2242).  *See also, United*

*States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002). Amendments of § 2255 petitions "made after the statute of limitations has run relate back to the date of the original and amended pleadings if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Felix*, 545 at 656 (*quoting* FED. R. CIV. P. 15(c)(2)). In *Felix*, the Supreme Court rejected the Ninth and Seventh Circuit's broad interpretation of "conduct, transaction, or occurrence," which held that an amended petition would relate back to the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction or sentence." *Id.* As the Supreme Court explained:

> Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto.

*Id.* at 656-57. The Court thus defined "conduct, transaction, or occurrence" less broadly "to allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. The Court expressed the rule as: "An amended habeas petition does not relate back (and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Conversely, relation back will be permitted when the original and amended petitions state claims that are tied to a "'common core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. The Supreme Court cited two cases as examples of amendments that would relate back:

> For example, in *Mandacina v. United States*, the original petition alleged violations of *Brady v. Maryland*, while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the

7

same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams*, the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted.

*Id.* at 664 n.7 (citations omitted).

From the very outset, Yassine's claim has been that his plea was involuntary due to false assurances that if he pled guilty, his sentence would be run concurrent with his 151-month money laundering sentence. That claim is founded on the facts surrounding his guilty plea, which include not only the alleged assurances given him by his counsel, but also the discussions relating to the plea agreement—if any—between the attorneys and the trial court. Both claims involve the factual allegation that Yassine's plea was involuntary based on counsel's assurance that Yassine's sentence would run concurrently with his previous sentence. Yassine's amended claim merely adds the allegation that Judge Sparks' alleged involvement in those discussions renders the plea involuntary under Rule 11(c). Because the original and amended petitions state claims that are tied to a "common core of operative facts" which unite the original and newly asserted claims, and the new claim is not supported by facts differing in "time and type" from the facts supporting the original claim, Yassine's amended petition relates back to the original, timely-filed petition.

## B.    Is Yassine's Rule 11 Claim Procedurally Barred?

The Government contends that even if the Rule 11 claim relates back to the initial 2255 filing date, Yassine is barred from raising it due to his failure to have raised it in his direct appeal. It is not at all clear, however, that Yassine failed to raise the issue on direct appeal. As the Court has mentioned, Yassine's appellate counsel filed an *Anders* brief. As required, the Clerk of the circuit court sent Yassine a letter informing him of that fact, and advising him that he had the right to

respond to the brief and to raise any reason why he believed his appeal had merit and should be considered. Yassine responded with a one-page letter. In addition to raising an issue regarding the order of restitution imposed by the trial court, the letter stated:

> My current counsel never took the time to confer or communicate with me and my prior counsel, not even once, regarding other concerns and issues of involuntary plea and misrepresentation made to me prior to sentencing by counsel and prosecution in relation to what judge sparks had said to them regarding sentencing at two different occasions in chamber and another, on the day of sentencing.

Dkt. No. 39 in *Yassine v. United States*, Case No. 13-50919 (5th Cir., Mar. 17, 2014). The Circuit, however, did not address the issue, relying on the statements in the *Anders* brief suggesting that there were no non-frivolous grounds for the appeal.[2]

Further, assuming that a procedural bar argument is available to the Government, it has likely waived this argument by failing to raise it in its response. And even if the argument has not been waived, Yassine can demonstrate cause and prejudice for not having raised the issue earlier. The basic principles are well known. The Supreme Court has "consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (citing numerous cases). "Accordingly, a defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992) (quoting *Frady*, 456 at 168). Here, Yassine can demonstrate both

---

[2]As noted in the next portion of this section, given that there was no evidentiary record to support Yassine's claim, it is not surprising that the circuit did not address it.

9

cause for not raising the argument in his direct appeal, and prejudice that would result if he is prevented from raising the claim.

As noted above, Yassine's trial counsel withdrew after sentencing, and a new attorney was appointed for Yassine's appeal. The record suggests that the appellate counsel never met or communicated with Yassine prior to filing the *Anders* brief. *See, e.g.,* Response to *Anders* brief, *supra*. *See also* Dkt. No. 86-1 at 13-14, 39-40, 46 ¶ 13.[3] As a result, the appellate attorney was

---

[3]The Government challenges this point, based on an affidavit in which Yassine states he asked his appellate counsel to raise an issue regarding the consecutive sentence and the attorney refused. Dkt. No. 102 at 5 (citing Dkt. No. 85-1 at 7). In this affidavit, dated two-and-a-half years after the appeal, Yassine states, without identifying the manner of the communication or the date, that he asked the attorney to raise the issue, and that the attorney refused based on the waiver of appeal provision in the plea agreement, and withdrew from his case. Dkt. No. 85-1. In many other places (cited in the text), Yassine states that he never spoke with the appellate attorney, and that the attorney never contacted him. In fact, as has been discussed, in his response to the *Anders* brief, Yassine told the Fifth Circuit that the attorney "never took the time to confer or communicate with me and my prior counsel, not even once." Though the 2016 affidavit appears to suggest some communication of the issue to the appellate counsel, without testimony from Yassine, it is difficult to know what the communication referred to in the affidavit was. But some light is shed on the issue in Yassine's letter to the attorney in 2015, where he states:

> This letter follows my request of the last correcpondance dated September 28, 2015.
> For some time i had given up trying to contact you because of the numerous failed
> previous attempt. Particularly when i was still at Bastrop, Texas FCI prior to and
> after you filed the Anders Brief in my direct appeal of the case mentioned above.
> (timeline period of November 2013 to February 2014, should you want to double
> check your records to refresh your memory).

> I had attempted to email and mail you asked that you meet with me in person to
> discuss the issues i wished to raise on direct appeal that stemmed from my
> represenatation of Mr Toland prior to sentencing , as well as th eplea agreement in
> my case. Despite my letters from FCI bastrop , you refuse to answer or even listen
> to the possibility of merritious issue and went forward and filed the anders brief.

Dkt. No. 86-1 at 39 (spelling and grammar original). Thus Yassine's reference in the affidavit to having "asked" the attorney to challenge the consecutive sentence appears to refer to the many letters and emails Yassine apparently sent him. And the reference to the attorney "refusing" to raise the issue and withdrawing appears to be Yassine's description of what is stated in the *Anders* brief. At

unaware of Yassine's view that he had been assured that he would receive a concurrent sentence, or that Yassine was told by his trial counsel that he and the AUSA had met with Judge Sparks about the issue. Because of this, not only did the appellate attorney fail to raise any issue on this point, in his brief he affirmatively told the Fifth Circuit that "the district court complied with Fed. R. Crim. P. 11 during the plea proceedings." Dkt. No. 87-3 at 11. And while he acknowledged that both Yassine and the Government requested that the sentence run concurrent to the tax fraud sentence, Yassine's appellate counsel informed the Fifth Circuit that the district court's decision to run the sentence consecutive to the earlier sentence was well within his discretion and was not error. *Id.* at 17. In these circumstances, where the appellate brief was filed without consultation with Yassine, it is hardly fair to find that Yassine has waived his complaint because it was not contained in that brief.

Moreover, at the time the appellate brief was filed, no factual record existed of the discussions surrounding Yassine's guilty plea, or of the alleged conversations between counsel and the trial court. Indeed, other than the documents filed by Yassine and the Government related to the § 2255 motion, that factual record has still not been developed, which is why a hearing is scheduled in this matter. The lack of a factual record on the point is likely also why the Fifth Circuit dismissed the appeal. *Cf. United States v. Davila*, 133 S. Ct. 2139 (2013) (Eleventh Circuit raised Rule 11 violation *sua sponte* after *Anders* brief filed because alleged violation took place in court proceeding included in the record, which the circuit discovered in its independent review). Thus, it would likely not have been possible for Yassine to raise this issue on a direct appeal. When this is the case, the

---

a minimum, the record before the Court demonstrates that the Rule 11 issues were never discussed in any meaningful way between Yassine and the appellate attorney.

appropriate vehicle for raising the issue is a § 2255 petition. *Waley v. Johnston*, 316 U.S. 101, 104-05 (1942) ("The issue here was appropriately raised by the habeas petition. The facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal"). The situation here is akin to ineffective assistance of counsel claims, which the Supreme Court has stated are better resolved in habeas proceedings, where a supporting factual record can be developed, given that the direct appeal record likely will not contain the relevant evidence. *Massaro v. United States*, 538 U.S. 500, 505 (2003).

With regard to demonstrating prejudice, while it may be possible for judicial participation in plea negotiations to be harmless error, *Davila*, 133 S. Ct. 2139 (violation of Rule 11(c)(1) does not result in automatic vacatur of plea), that is usually not the case. For example, in *United States v. Miles*, 10 F.3d 1135, 1141 (5th Cir. 1993), the court noted that "the government does not cite, nor does our research find, one instance in which a federal court has found judicial participation in plea negotiations to be harmless error." Certainly, Yassine claims that he would not have pled guilty had his counsel not had conversations with the trial court that led Yassine to believe that the two sentences were going to be run concurrent to one another.

In summary, the Government has waived the limitations defense to the timing of Yassine raising his claim of a Rule 11(c)(1) violation, and even if no waiver has occurred, the claim relates back to the original, timely-filed, petition. Further, Yassine is not procedurally barred from raising that claim, as the Government has waived the procedural bar defense by failing to raise it in its initial response, and, regardless, Yassine has shown both cause and prejudice for failing to raise the claim in his direct appeal. Thus, permitting Yassine leave to amend to add (or amplify) that claim is appropriate.

**III.  Order**

Based on the foregoing, Hussein A. Yassine' Motion for Leave to Amend § 2255 Petition (Dkt. No. 102) is **GRANTED**.  Yassine's counsel shall submit his amended petition no later than January 13, 2017.

SIGNED this 27th day of December, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE